UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TREMAYNE COLLIER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SCOTT KERNAN,<br><br>　　　　Defendant. | Case No. 1:16-cv-01616-DAD-MJS (PC)<br><br>**FINDINGS AND RECOMMENDATION TO DISMISS CASE, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM**<br><br>**FOURTEEN DAY OBJECTION DEADLINE**<br><br>**(ECF No. 1)** |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff has declined Magistrate Judge jurisdiction. (ECF No. 5.) No other parties have appeared. Plaintiff's complaint is before the Court for screening. (ECF No. 1.)

**I.　Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally frivolous, malicious, or that fail to state a claim upon which

relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## II.     Pleading Standard

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 677-78.

## III.     Plaintiff's Allegations

Plaintiff is currently incarcerated at the Sierra Conservation Center ("SCC"), a

state prison in Jamestown, California. He brings this suit against Defendant Scott Kernan, the Secretary of the California Department of Corrections and Rehabilitation ("CDCR"), in his official capacity only. His allegations may be summarized as follows:

In 1977, the CDCR implemented regulations allowing for inmates to have overnight family visits. These regulations are codified in California Code of Regulations § 3177. When these regulations were first implemented, inmates serving life sentences were not precluded from partaking in family visits. In 1995, the regulations were amended so that inmates serving life sentences without the possibility of parole or without a parole date could not have family visits.[1]

Plaintiff is currently serving a life sentence without the possibility of parole. In 2016, he married Erica Delgado-Collier in the visiting room at SCC. As a devout follower of Islam, Plaintiff believes that in order for his marriage to be valid under Islamic law, he must consummate his marriage and maintain regular conjugal relations. Otherwise, his marriage will be subject to dissolution. This point has been emphasized by the prophet Mohammad on "numerous occasions."

On March 23, 2016, Plaintiff submitted a family visit application (a "Form 1046") to Correctional Counselor J. Wetenkamp. On April 5, 2016, Wetenkamp denied Plaintiff's application, stating that Plaintiff was ineligible for family visits under § 3177(b) of the California Code of Regulations. Plaintiff submitted a Form 602 inmate appeal regarding this denial. The appeal was denied at the first level, again on the grounds that Plaintiff was ineligible based on his status as a life prisoner without a parole date.

---

[1] Cal. Code Regs. tit 15, § 3177(b) states in relevant part:
Family visiting is a privilege. . . .
(1) Family visits shall not be permitted for inmates convicted of a violent offense involving a minor or family member or any sex offense . . .
(A) Inmates may be prohibited from family visiting where substantial documented evidence or information of the misconduct described in section 3177(b)(1) exists, without a criminal conviction. . . .
(B) Family visiting shall be restricted as necessary to maintain order, the safety of persons, the security of the institution/facility, and required prison activities and operations, pursuant to section 3170.
(2) Family visits shall not be permitted for inmates who are in any of the following categories: sentenced to life without the possibility of parole; sentenced to life, without a parole date established by the Board of Parole Hearings . . . .

Plaintiff appealed to the second level. There, Chief Deputy Warden Clifford Smith issued a modification order directing the Unit Classification Committee ("UCC") to reevaluate Plaintiff's case factors because Smith believed that Plaintiff had committed prior violent offenses which would preclude Plaintiff from having family visits even if he were not serving a life sentence. On July 20, 2016, Plaintiff appeared before the UCC per the modification order. The UCC determined that Plaintiff had not committed any violent offenses that would preclude him from participating in family visits, however Plaintiff was still deemed ineligible for family visits based on his lack of a parole date. Plaintiff's appeal was denied at the third level, again on the grounds that Plaintiff was ineligible because he was a life prisoner without a parole date.

On July 1, 2016, Senate Bill 843 ("SB 843") went into effect. SB 843 dictates that no inmate shall be denied family visits based solely on the fact that he is serving a life sentence without a parole date.[2] Therefore, on September 15, 2016, Plaintiff submitted a renewed family visit application to Wetenkamp, this time explaining the recent passage of SB 843. Wetenkamp again denied Plaintiff's application, but did not state why. Plaintiff submitted several CDCR Form 22's asking that he be allowed family visits in light of SB 843. Plaintiff was told that officials were awaiting "qualifying criteria" from CDCR headquarters. Plaintiff states that the CDCR is "fully aware" of SB 843 but has failed to repeal § 3177(b).

Plaintiff has no history of violence against a minor or spouse, nor is he a sex offender. Plaintiff alleges a denial of his right to marry and violations of the First Amendment Free Exercise Clause and the Religious Land Use and Institutionalized Persons Act ("RLUIPA.") He seeks an injunction directing Defendant to allow Plaintiff family visits.

---

[2] This provision of SB 843 was codified at Cal. Penal Code § 6404 (West 2016), which reads: "Inmates shall not be prohibited from family visits based solely on the fact that the inmate was sentenced to life without the possibility of parole or was sentenced to life and is without a parole date established by the Board of Parole Hearings."

4

**IV.    Analysis**

    **A.    Right to Marry**

Plaintiff claims the CDCR's denial of conjugal visits denies Plaintiff his due process right to marry. However, while prisoners do retain the right to marry, Zablocki v. Redhail, 434 U.S. 374 (1978), it is well-settled that that right must be circumscribed by security concerns incident to incarceration. Turner v. Safley, 482 U.S. 78, 95 (1987) ("The right to marry, like many other rights, is subject to substantial restrictions as a result of incarceration.") "The loss of the right to intimate association is simply part and parcel of being imprisoned for conviction of a crime." Gerber v. Hickman, 291 F.3d 617, 620 (9th Cir. 2002). Thus, while Plaintiff has a constitutionally protected right to enter into marriage, he does not, by extension, have a right to conjugal visits.

    **B.    Free Exercise of Religion**

The Free Exercise Clause provides, "Congress shall make no law . . . prohibiting the free exercise" of religion. U.S. CONST. amend I. Thus, "reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendments." Cruz v. Beto, 405 U.S. 319, 322 n. 2 (1972).  However, as with other First Amendment rights in the inmate context, prisoners' rights may be limited or retracted if required to "maintain [] institutional security and preserv[e] internal order and discipline."  Bell v. Wolfish, 441 U.S. 520, 549 (1979).  Thus, prisons may lawfully restrict religious activities for security purposes and other legitimate penological reasons. Turner, 482 U.S. at 89-90; Pierce v. Cnty. of Orange, 526 F.3d 1190, 1209 (9th Cir. 2008). Furthermore, the Supreme Court has held that generally-applicable laws that incidentally burden a particular religion's practices do not violate the First Amendment. Employment Division v. Smith, 494 U.S. 872, 878 (1990).

The regulation at issue here does not prohibit conjugal visits solely for Muslim inmates, but for all life prisoners without a parole date regardless of his or her religion. It therefore does not violate the Free Exercise Clause. Owens v. Kernan, No. 2:16-cv-

0167-EFB, 2016 WL 3361885 (E.D. Cal. June 16, 2016). The Court will recommend dismissing this claim without leave to amend.

### C. Religious Land Use and Institutionalized Persons Act

RLUIPA provides that "no government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability," unless the government demonstrates that the burden furthers "a compelling governmental interest," and does so by the "least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)-(2); Holt v. Hobbs, 135 S. Ct. 853, 860 (2015); Greene v. Solano Cty. Jail, 513 F.3d 982, 986 (9th Cir. 2008). "Religious exercise" includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc–5(7)(A). A "substantial burden" is one that imposes a significantly great restriction or onus on religious exercise. San Jose Christian College v. City of Morgan Hill, 360 F.3d 1024, 1034–35 (9th Cir.2004).

Neither the Supreme Court nor the Ninth Circuit has addressed whether a sincerely held religious belief necessitating conjugal visits must be accommodated under RLUIPA. However, this Court has repeatedly held that conjugal visits, like marriages, are subject to substantial restriction as a result of incarceration and thus need not be accommodated under RLUIPA. Martin v. Cate, No. 1:10-cv-01509 LJO GSA, 2014 WL 348442, at *3 (E.D. Cal. Jan. 31, 2014) (Plaintiff's claim that he was denied conjugal visits based on his status as a life prisoner not cognizable under RLUIPA); Shields v. Foston, No. 2:11-cv-0015 JAM EFB, 2013 WL 3456964 at *5 (E.D. Cal. July 9, 2013) (finding that § 3177 was narrowly tailored to accomplish the compelling government objective of enhancing prison security); Lucas v. Tilton, No. 1:08-cv-00515-AWI-YNP, 2010 WL 431737 (E.D. Cal. Feb. 2, 2010) (concluding that the balance of equities did not support the plaintiff's request for a preliminary injunction because the loss of intimate association was a well-known aspect of incarceration).

Here, Plaintiff claims that consummating his marriage is necessary to fulfill his sincere religious beliefs. However, even assuming that conjugal visits are integral to

Plaintiff's religious exercise, the Court finds that § 3177(b) is necessary to further a compelling governmental interest. Shields, 2013 WL 3456964 at *5-6 (recognizing the security threat posed by allowing unsupervised visitation for inmates in high-risk categories); see also Cutter v. Wilkinson, 544 U.S. 709, 722 (2005) ("We do not read RLUIPA to elevate accommodation of religious observances over an institution's need to maintain order and safety. Our decisions indicate that an accommodation must be measured so that it does not override other significant interests."); Block v. Rutherford, 468 U.S. 576, 586 (1984) ("That there is a valid, rational connection between a ban on contact visits and internal security of a detention facility is too obvious to warrant extended discussion.")

Plaintiff relies on SB 843 (now § 6404 of the Penal Code) seemingly to prove that the state has already determined that § 3177(b)(1) is more restrictive than is necessary to achieve institutional security goals. His reliance on this statute, however, is misplaced. Section 1983 creates a cause of action for the violation of a *right*, not merely a law. There is no indication that the California legislature intended to create a right to family visits in enacting this statute, or that it meant to create a private cause of action for its supposed violation. See Save Our Valley v. Sound Transit, 335 F.3d 932, 937 (9th Cir. 2003) (holding that implied rights of action and rights enforceable through § 1983 are creatures of substantive law, and must be created by the legislature).

In any case, it appears that since the (very recent) enactment of § 6404, Plaintiff's circumstances are under review. Plaintiff may yet benefit from its passage, at least in the sense that his family visits may no longer be denied solely on the basis of his status as a life prisoner without a parole date.

Absent the existence of exceptional circumstances not present here, the Court will not intervene in the day-to-day management of prisons. See e.g., Overton v. Bazzetta, 539 U.S. 126, 132 (2003) (prison officials entitled to substantial deference); Sandin v. Conner, 515 U.S. 472, 482-83 (1995) (disapproving the involvement of federal courts in the day-to-day-management of prisons).

For the above stated reasons, Plaintiff's RLUIPA claim should be dismissed. Leave to amend should not be granted.

**V.    Conclusion**

Based on the foregoing, it is HEREBY RECOMMENDED that Plaintiff's complaint be DISMISSED with prejudice for failure to state a claim upon which relief may be granted.

The Findings and Recommendation are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within **fourteen** (14) days after being served with the Findings and Recommendation, Plaintiff may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    February 1, 2017            /s/ *Michael J. Seng*
                                      UNITED STATES MAGISTRATE JUDGE